No. 593

First Circuit

LAURENT v. DENDINGER, INC.

(March 5, 1930. Opinion and Decree.)
(April 14, 1930. Rehearing Refused, the Original Decree Being Amended.)

Harvey E. Ellis, Robert D. Jones and Adrian D. Schwartz, of Covington, attorneys for plaintiff, appellee.

Dresner & Dresner, of New Orleans, and Burns & Burns, of Covington, attorneys for defendant, appellant.

ELLIOTT, J. Plaintiff-appellee moves to dismiss this appeal on the ground that it was returnable on December 1, 1928, and had not been filed until December 3, 1928.

The construction that has always been placed on Code Practice, arts. 585 and 883, is that, if the record was filed within 3 days after the return day, it was in time. The motion to dismiss is overruled.

Defendant-appellant moves this court to remand the appeal herein for the purpose of having the lower court require a bond for cost. The case has been brought up on appeal by defendant-appellant. As for the bond which appellant endeavors to have required of the plaintiff, that matter was carried before the Supreme Court in an effort to have the lower court require the bond before any appeal was taken. The Supreme Court, acting on the writ that had been sued out in that court, refused to compel the lower court to require the bond, on the ground that defendant's motion came too late. If it was too late then, it is too late now. The motion to remand is refused.

Rosa Laurent, widow of William Laurent, alleging his accidental injury and resulting death while in the employ of the defendant, Dendinger, Inc., claims compensation in the amount of $4.87½ per week, beginning September 6, 1927, to continue until her death, the first payment to be made September 13, 1927. She also claims $163.50 for medical and funeral expenses.

The defense is that the death of her husband was not due to accident, but to pulmonary tuberculosis, with which he was suffering previous to his employment. There was judgment in favor of the plaintiff for compensation as claimed, but there was no allowance for medical fees and funeral expenses.

On the first hearing of this appeal we held that Act 20 of 1914 (amended by Act 85 of 1926) did not provide for the payment of any compensation to a widow on account of the death of her husband, where none had been paid previous to his death. That section 8, subsec. 2, of Act 20 of 1914, as amended by Act 85 of 1926, sec. 1, providing that compensation in such a case was to be "as hereinafter provided," not having been followed by any provisory provision, no compensation could be allowed under the statute.

We reversed the judgment appealed from and dismissed plaintiff's suit. We had made a similar ruling in the case of Missouri Cooley Bass vs. Weber-King Mfg. Company, 168 La. 651, 123 So. 112, which was then pending before the Supreme Court on a writ of review, and had not at that time been acted on.

The Supreme Court, reviewing Act 85 of 1926, held that compensation was contemplated and provided for in the situation stated.

Plaintiff's application for rehearing in the present case was therefore granted in order that we might decide on the subject in harmony with the decision of the Supreme Court in the case cited.

The ruling of the lower court, overruling the defense mentioned, is therefore now affirmed.

The defendant urges an exception to plaintiff's demand, on the ground that she does not expressly allege in her petition that she was living with her husband at the time of the accident and at his death, relying on Act 85 of 1926, sec. 1, amending section 8, subsec. 2, pars. (A) and (B) and (K) of Act 20 of 1914; the two former reading as follows: "The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee. (B) A wife upon a husband with whom she was living at the time of her accident or death." It is also provided under paragraph (K) that the widow must be living with her deceased hsuband at the time of the injury and death.

The presumption of the law is not a necessary averment in the wife's petition in order to show her dependency.

Under the law, Civil Code, art. 120, a wife is bound to live with her husband and is presumed to do so.

She alleges that the decedent and herself were married on December 27, 1903, and that she was entirely dependent on him for support. This is sufficient. The exception was properly overruled. The other grounds of exception urged by defendant to plaintiff's demand come within the reason for the decision in 168 La. 651, 123 So. 112, and were properly overruled in the lower court.

William Laurent was assisting two other men in carrying a cypress cross-tie. Two of them were carrying the front and by means of a wooden bar, called a lug hook. A lug hook, according to our understanding, is a wooden bar with two iron hooks hanging from it in the middle. These hooks catch into the thing to be carried and it is then lifted with a man carrying each end of the bar. Plaintiff's husband had been carrying the rear end of the tie by lifting it with his hands. After it had been carried in the way stated about fifty feet, the men laid it down and rested, at which time Laurent complained of being tired. When they started again one of the men who had been carrying one of the ends of the bar took the end of the tie that

Laurent had been carrying, and Laurent took one of the ends of the bar. In this way the tie was carried the remainder of the distance, about fifty feet and placed on the ground where it was to be used. Laurent then walked about forty feet away and fell to the ground unconscious, a hemorrhage of blood coming from his mouth. A physician in the employment of the defendant was sent for. He arrived and administered first aid treatment for the hemorrhage, had him removed from the ground where he had fallen to a bunk in a camp car, and directed that he be kept quiet for three or four days, at the end of which time he said he would return.

The plaintiff Laurent's wife, living at Madisonville, nearly thirty miles distant, hearing of what had happened to him, came the next day in an automobile, had him taken out of the bunk, and placed in the automobile in which she had come and carried him back home, that is to Madisonville. She then sent for a physician living at Covington, who came the next day following Laurent's return and found him, he says, suffering with incipient bronchial pneumonia. Five days thereafter he died with this disease. The immediate cause of Laurent's death was bronchial pneumonia, and that in turn was produced by the hemorrhage; there is no serious dispute about that, but there is a diversity of opinion among the physicians as to the cause of the hemorrhage. The physician who had observed and treated Laurent at the place where he was stricken expressed the opinion that he was suffering with consumption, and that the hemorrhage which prostrated him was brought on him by that disease and not as a result of injury received in carrying the cross-tie. The opinion of this physician was based entirely on his observation and what he was told about Laurent at the time.

Another physician living at Madisonville had treated Laurent more than a year previous to the time in question. He declared that Laurent had consumption; that he had treated him for it; that he had examined Laurent about 8 months before his death; that both lungs were then infected. His opinion was based entirely on his observation and personal examination, and not on a microscopic or pathologic examination.

The physician at Covington, who had been called by Laurent's wife to treat him upon his return to Madisonville, was a specialist in pulmonary diseases. He testified that he microscopically examined the sputum of the decedent at the time he was called to see him, and he was very positive in his statement that he did not have tuberculosis.

William Laurent's body had been embalmed and the defendant obtained an order from the court to take up his body and remove his heart and lungs in order that they might be examined by an expert pathologist. This was done and the pathologist, after examination, testified that he found in the lungs the microbes of tuberculosis.

Plaintiff then had the heart and lungs of decedent examined by an expert pathologist microscopically, and this physician testified that there was no evidence of tuberculosis.

The court, with the consent of both sides, had the lungs and heart examined by another expert pathologist. This physician testified that the decedent did not have tuberculosis; that no infection of that disease existed in his lungs.

There is testimony in the record that decedent, while working for defendant in the sawmill camp where he was stricken, was often heard to cough, etc. But the evidence

shows that it was not unusual for the laborers employed there to cough.

The evidence shows that Laurent had been employed at the camp as a common laborer for some time. It does not appear how long, but the indication is that he was there several weeks before he was stricken. His work consisted of lifting and other labor called heavy work, and it seems reasonable that, if he was suffering with tuberculosis to the extent that it brought on hemorrhage, which indirectly cost him his life, he would not have been physically able to do the work required of him. Yet on the day he was stricken and up until the time thereof no fault was observed as to his capacity to do the work required of a common laborer. As for the hemorrhage, some of the physicians say it could have been caused by lifting or by a sudden jerk or stumble while walking with the tie, etc. There was no difference in opinion that the blood passing into the bronchial tubes caused the infection of pneumonia.

The defendant contends that the act of the plaintiff in taking him out of the camp car and carrying him, in a sitting posture, in an automobile to Madisonville brought it about. It was brought out that the object of the doctor at the camp in directing that he be kept quiet was to prevent another hemorrhage. The trip did not produce another hemorrhage; the blood had evidently passed into his bronchial tubes before he was moved from the camp. And the better opinion is that the infection of pneumonia had taken place at the camp, and that pneumonia would have developed had he remained quietly in the camp car, just as it did after he had reached home.

The evidence as a whole leads to the conclusion that the death of plaintiff's husband was due to an accidental injury, sustained by him while performing services arising out of and incidental to his employment by defendant and in the course of his employer's business.

The plaintiff is therefore entitled to compensation under the law, the lower court held, "ending upon the death or remarriage of the plaintiff." And it seems that such is the intendment of the act.

The Supreme Court in the Missouri Cooley, Bass Case, 168 La. 651, 123 So. 112, 113, referring to the provision in the same act, under the paragraph (J), which provides that, "where payments of compensation have been made to the employee before his death, the compensation for dependents as provided for in this Section shall begin on the date of the last of such payments and shall not continue for more than three hundred weeks from the date of the accident," said: "It would be a strained construction of the law that would permit the injured employee, himself, to receive compensation prior to his death, but would withhold compensation from his dependents who are deprived of his support by that death. Such a construction would be wholly inconsistent with the beneficial purpose of the law to protect the dependents of an employee who is fatally injured in the course of his employment by depriving them of protection at the time they need it most. We cannot sanction that construction of the statute. We prefer to hold, as being more in consonance with the legislative intention and purpose, that the provisions of the quoted paragraph when read together with the other provisions of the statute are sufficient authority for the court to fix the duration of compensation allowed a deceased employee's dependents at a period not to exceed 300 weeks." But the court, in saying this, was

not considering the provisions of section 8, subsec. (2), par. (F) which reads:

"The marriage or death of a dependent shall terminate payments to such dependent, but shall not affect payments allowed other dependents. Should the widower become capable of self-support, compensation shall cease as to him. Compensation payments to dependents shall also terminate when the condition of dependency ceases, except in the case of a widow or child."

And taking the opinion as a whole it does not seem to be inconsistent with the construction placed by the lower court on the language used in paragraph (F).

Plaintiff has answered the appeal and prays that she be allowed $163.50 for medical fees and for the burial of the decedent. The petition alleges that the amount is due, and the law authorizes it, but the judgment appealed from does not allow anything on that account. There is no express prayer to that effect, but there is this concluding request:

"Petitioner further prays for all general and necessary orders in the premises and for such judgment as equity and the nature of this case may require, and for cost and for general relief."

We think the amount should be allowed. Le Goaster vs. Lafon Asylum, 159 La. 855, 106 So. 329, and other cases cited in plaintiff's brief.

For these reasons the judgment appealed from herein is affirmed, to the extent that it allows the plaintiff, Rosa Laurent, compensation to be paid by defendant, Dendinger, Inc., at $4.87½ per week, counting from September 6, 1927, the first payment of which was due on September 13, 1927, and to continue weekly thereafter until her death or remarriage, with legal interest on each weekly amount due until paid. But it is amended so as to further award the plaintiff judgment against the defendant in the further sum of $163.50 on account of medical fees and burial expenses.

As thus amended, the judgment appealed from is affirmed. Defendant and appellant to pay the cost in both courts.

LECHE, J., not participating.

ON APPLICATION FOR REHEARING.

In this case defendant and appellant contends that this court erred in granting to the plaintiff Rosa Laurent compensation until her death or remarriage, and that her compensation should have been fixed weekly for 300 weeks as decided by the Supreme Court in the case of Bass vs. Weber-King Mfg. Co., Inc., 168 La. 651, 123 So. 112, and the plaintiff and appellee in a petition to the court likewise prays that this change be made.

The court has furthermore come to the conclusion that the former opinion is in error in that respect and that the compensation of the plaintiff should have been fixed for a limited time, and that in this instance it should be for three hundred weeks.

It is therefore ordered and decreed that the previous decree of this court awarding plaintiff Rosa Laurent compensation weekly until her death or remarriage is avoided and set aside and it is now ordered as requested by both sides that her compensation be fixed at $4.87½ per week counting from September 6, 1927, the first payment of which was due on September 13, 1927, and to continue weekly thereafter for a period of three hundred weeks with legal interest on each weekly amount until paid. And that she recover the further sum of $163.50 on account of medical fees and burial expenses. Defendant and appellant to pay the costs of both courts.

As thus amended the rehearing is refused.